**UNITED STATES of America**

v.

**Constance PERRY.**

**Crim. No. 89–0162–24.**

United States District Court, District of Columbia.

June 8, 1990.

Jay B. Stephens, U.S. Atty., District of Columbia, John P. Dominguez and David Schertler, Asst. U.S. Attys., for the Government.

Daniel Ellenbogan, Kensington, Md., for defendant Rayful Edmond, III.

Cynthia Lobo, Washington, D.C., for defendant Melvin Butler.

Elise Haldane, Washington, D.C., for defendant James A. Jones.

Joseph Conte, Washington, D.C., for defendant Jerry Millington.

Leroy Nesbitt, Washington, D.C., for defendant Tony Lewis.

Ernest McIntosh, Jr., Washington, D.C., for defendant Willie Childress.

Catherine Brown, Washington, D.C., for defendant Keith Cooper.

Arthur M. Levin, Washington, D.C., for defendant Columbus Daniels.

William Garber, Washington, D.C., for defendant Rachelle Edmond.

Stuart F. Johnson, Washington, D.C., for defendant Robert Hardy.

Thomas Slawson and Richard Beizer, Washington, D.C., for defendant Bernice Hillman McCraw.

Robert Werdig, Jr., for defendant David McCraw.

Leonard Long, Washington, D.C., for defendant John Monford.

Robert Sanders, Washington, D.C., for defendant Armaretta B. Perry.

W. Gary Kohlman, Washington, D.C. for defendant Constance D. Perry.

Sol Rosen, Washington, D.C., for defendant Melvin Stewart.

Retna Pullings, Washington, D.C., for defendant Jeffrey Thompson.

Nina Kraut, Washington, D.C., for defendant Raynice Thompson.

## ORDER

CHARLES R. RICHEY, District Judge.

The defendant Constance Perry filed a motion for a mistrial on March 30, 1990 on the ground that the sequestration and anonymity of the jury in the above-captioned case prejudiced her.[1] There is empirical evidence demonstrating that defendant's motion is lacking in merit and that the anonymity and sequestration of a jury does not work to a defendant's detriment. On December 6, 1990, the anonymous and sequestered jury in the trial of eleven of defendant's co-defendants in the above-captioned case acquitted the defendant James Antonio Jones of possessing with the intent to distribute cocaine.[2] In addition, on February 6, 1990, a semi-anonymous and sequestered jury acquitted John Gotti on conspiracy and assault charges.[3] Finally, as

---

1. *See* Court's Opinion and Order (filed February 5, 1990) (stating basis for the Court's decision to make jury anonymous and sequestered).

2. The jury did, however, convict the defendant Jones of conspiring to distribute or to possess with the intent to distribute cocaine or cocaine base.

3. *See* Order in *People of the State of New York v. John Gotti, et al.,* Indictment No. 359/89 filed on December 15, 1989 (attached hereto and in-

the United States Court of the Appeals for the Third Circuit stated:

> [T]he defense's assumption that anti-defendant bias is the only possible, or even the most likely, reaction is suspect.... A juror who fears a defendant's retaliation might be more apt to return a guilty verdict despite such fears rather than because of them. If, however, anonymity dispels apprehension, it serves the ideal of dispassionate judgment.

*United States v. Scarfo,* 850 F.2d 1015, 1036 (3rd Cir.), *cert. denied,* 488 U.S. 910, 109 S.Ct. 263, 102 L.Ed.2d 251 (1988).

Accordingly, it is, by the Court, this 8th day of June, 1990,

ORDERED that the defendant Constance Perry's motion for a mistrial, which was filed on March 30, 1990, shall be, and hereby is, denied.

corporated herein by reference as Exhibit A); Verdict Forms in *People of the State of New York v. John Gotti, et al.,* Indictment No. 359/89 (attached hereto and incorporated herein by reference as Exhibit B); Raab, *For Gotti Jurors, Long Isolation Under Guards' Watchful Eyes,* N.Y. Times, Feb. 5, 1990, at B3, col. 1 (attached hereto and incorporated herein by reference as Exhibit C); and Glaberson, *Sequestering a Jury: The Chances a Judge Takes,* N.Y. Times, Feb. 9, 1990, at B3, col. 1 (attached hereto and incorporated herein by reference as Exhibit D).

EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK  :  IAS PART 74

-------------------------------------------x

THE PEOPLE OF THE STATE OF NEW YORK

         -against-

JOHN GOTTI and ANTHONY GUERRIERI,

               Defendants.

-------------------------------------- x

**FILED**

**JUN - 8 1990**

JAMES E. DAVEY, Clerk

Indictment No. 359/89

EDWARD J. McLAUGHLIN, J.:

      The People's motion for an anonymous jury is decided as follows.  Although this court believes that it is not violative of the New York State or Federal Constitutions to empanel jurors whose names are not disclosed, the court finds that the procedure is prohibited by the Criminal Procedure Law.  The court grants a protective order, however, to preclude disclosure of the business and residential addresses of all prospective and sworn jurors (CPL 270.15, subd 1-a).

      A further written opinion elaborating the findings of fact and conclusions of law will issue after the jury is selected.

      The above constitutes the order and opinion of the court.

Dated:  December 15 , 1989

I hereby certify that the foregoing paper is a true copy of the original thereof, filed in my office.

MAY 15 1990

County Clerk, and Clerk of the Supreme Court New York County
• OFFICIAL USE

## EXHIBIT B

Verdict Sheet

# SUPREME COURT OF THE STATE OF NEW YORK

PART _____ 7H _____ COUNTY _____ NY _____

THE PEOPLE OF THE STATE OF
NEW YORK

*against*

JOHN GOTTI

Defendant

**FILED**

JUN – 8 1990

JAMES E. DAVEY, Clerk

INDICTMENT No. 358/89
JUSTICE EDWARD McLAUGHLIN
DATE PART 74 FEB 6 1990

| COUNT NUMBER | CRIME | GUILTY | NOT GUILTY |
|---|---|---|---|
| 1. | CONSPIRACY 4° | | ✓ |
| | CONSPIRACY 5° | | ✓ |
| 2. | ASSAULT 1° | | ✓ |
| | ASSAULT 2° | | ✓ |
| | ASSAULT 2° | | ✓ |
| 3 | ASSAULT 1° | | ✓ |

DATE MAY 13 1990
I hereby certify that the foregoing is a true copy of the original filed in my office.

County Clerk and Clerk of the
Supreme Court New York County
- OFFICIAL USE -

S.C. CRIM. No. 15
2/74

B.C.

Verdict Sheet

# SUPREME COURT OF THE STATE OF NEW YORK

PART _____ 7 4 _____ COUNTY _____ N Y _____

THE PEOPLE OF THE STATE OF
NEW YORK

*against*

ANTHONY GUERRIERI

Defendant

INDICTMENT No. 358/89

JUSTICE EDWARD J. McLAUGHLIN

DATE PART 74 FEB 6 1990

| COUNT NUMBER | CRIME | GUILTY | NOT GUILTY |
|---|---|---|---|
| 1. | CONSPIRACY 4° | | ✓ |
| | CONSPIRACY 5° | | ✓ |
| 2. | ASSAULT 1° | | ✓ |
| | ASSAULT 2° | | ✓ |
| | ASSAULT 2° | | ✓ |
| 3. | ASSAULT 1° | | ✓ |

DATE MAY 15 1990

I hereby certify that the foregoing
paper is a true copy of the original
thereof, filed in my office.

*Norman Goodman*

County Clerk and Clerk of the
Supreme Court New York County
OFFICIAL USE

S.C. CRIM. No. 15
2/74

EXHIBIT C

NEW YORK TIMES, FEB. 5, 1990

### Reporter's Notebook

## For Gotti Jurors, Long Isolation Under Guards' Watchful Eyes

### By SELWYN RAAB

Today when summations are completed at John Gotti's trial in Manhattan, everyone will go home except the jury. For three weeks the freedom of 12 jurors and four alternates has been severely restricted as the evidence unfolded against Mr. Gotti.

Confined to an undisclosed hotel, the jurors eat and travel together, always under the eyes of court guards. They are barred from meeting relatives and friends, and telephone conversations are monitored.

Stories about the trial and organized crime are clipped from newspapers and magazines read by the nine men and seven women. Watching television is permitted but news programs are blacked out. Jurors who take a walk or attend religious services are escorted by guards.

State juries are normally isolated only when deliberating verdicts. This is the first time in 10 years that a jury has been sequestered for an entire trial in a state court in the city.

Prosecutors asked for the extreme safeguard to prevent jury tampering. In ordering it, Edward J. McLaughlin, an acting State Supreme Court Justice, cited only the widespread news coverage of Mr. Gotti, who law enforcement authorities say runs the Gambino crime family, the nation's largest and most powerful Mafia group.

The sequestering has increased the cost of the trial to about $55,000 a week instead of a usual $15,000. Most of the added cost is for overtime for court guards.

### Who Will Play Gotti?

As the trial centerpiece, Mr. Gotti gets VIP treatment even from court guards. They clear onlookers away as he and his entourage move around the courthouse in lower Manhattan.

Mr. Gotti is never unattended. Associates hold umbrellas as he alights from his Mercedes–Benz on rainy days. An aide has a paper towel ready when he washes his hands in the men's room.

Hollywood has its eye on him, too. Actors Tony LoBianco and Ray Sharkey, who have both played mobsters, sat in the spectators' rows last week. Mr. Sharkey and Mr. Gotti had lunch together. Mr. LoBianco, who said he wanted to get a firsthand look at authentic lawyers and detectives, chatted briefly with Mr. Gotti. "He has a wonderful smile," Mr. LoBianco said of Mr. Gotti.

### A Simple Salesman

Mr. Gotti, 49 years old, of Howard Beach, Queens, insists he is unjustly painted as a mobster. But in attempts to discredit the prosecution's evidence, defense lawyers have made elliptical references to Mr. Gotti's reorganization of personnel in some unspecified group.

For the record, Mr. Gotti lists his occupation as a roving salesman for a plumbing contracting company.

### Custom v. Store–Bought

The name of Mr. Gotti's co-defendant, Anthony (Tony Lee) Guerrieri, rarely surfaced in court testimony, which ended on Friday. Mr. Guerrieri, 60, is implicated through secretly recorded conversations with Mr. Gotti in the shooting and wounding of a carpenters union official.

Detectives say Mr. Guerrieri runs illicit bookmaking enterprises for Mr. Gotti. Mr. Guerrieri has a record of arrests for gambling and receiving stolen goods. Convictions resulted in probation or fines. He has never served a prison term.

Unlike the opulently tailored Mr. Gotti who favors custom made dark double breasted silk suits, Mr. Guerrieri has worn off the rack clothes in light shades, except for one day when he appeared in a purple suit.

### A Counterpoint of Styles

Prosecution and defense lawyers are textbook examples of contrasting styles. The lead prosecutor, Michael G. Cherkasky, a Manhattan assistant district attorney,

asks questions in crisp methodical tones, leaning on a lectern.

Mr. Gotti's chief lawyer, Bruce Cutler, roams constantly as he fires questions, his voice soaring and dropping theatrically. To emphasize points, he slams tables and walls. Once he poked his head under the desk of the prosecutors, searching, he said, for the clients they represent. Displaying his dismay with a prosecution witness, he tossed a sheaf of papers in the air.

### The Judge Plays Infield

Justice McLaughlin, who plans to instruct the jury tomorrow, has the most conspicuous case he has heard in his seven years on the bench.

Friends say that in private life, Justice McLaughlin, 43, a bachelor and former prosecutor, is extremely shy. His most embarrassing moment at the trial came when a television camera focused on him as he read to the jury a transcript laced with obscenities. "That's on tape?" he asked the cameraman, flushing slightly.

A baseball fan, he attended a Dodgers' training camp for adults where he played infield. To corroborate his ability on the diamond, he passes out bubble-gum-card photos of himself in a Dodgers' uniform.

### EXHIBIT D

THE NEW YORK TIMES **METROPOLI-TAN** FRIDAY, FEBRUARY 9, 1990

### Sequestering a Jury: The Chances a Judge Takes

By WILLIAM GLABERSON

When the judge at the John Gotti assault trial decided to sequester the jurors for the length of the trial, he took a calculated risk.

His remarks Wednesday night suggesting that two jurors were in a dispute inside the jury room indicated the dangers of that strategy. One juror, he said, wrote him a note charging another with bringing a "previous bias" into the jury room. The dispute appeared to have quieted yesterday but experts said sequestered juries are prone to unpredictability.

"When a jury is sequestered," said Aaron R. Marcu, a former organized-crime prosecutor now in private practice in New York, "there is always a risk of personality clashes and increased tensions." Such tensions can lead to deadlocks and deadlocks can lead to mistrials.

New York law requires that jurors be sequestered—separated from their friends and families and the rest of the world—while they are deliberating. But Acting Justice Edward J. McLaughlin of State Supreme Court in Manhattan sequestered the Gotti jury for the entire trial, saying he was worried about publicity dealing with Mr. Gotti, who prosecutors say is the leader of the most powerful organized-crime group in the nation.

Legal experts said they doubted that that was the entire reason, noting that in most organized-crime cases juror security is a major issue. Prosecutors have long suggested that Mr. Gotti and his brother, Gene, have beaten them in court in a string of cases by illegally influencing jurors.

"Bought and paid for" was how Andrew J. Maloney, the United States Attorney in Brooklyn, put it after a Federal judge granted a mistrial in one of Gene Gotti's cases in 1988.

In that case, prosecutors said Gene Gotti and several co-defendants had "learned the identities of at least five of the anonymous jurors for the purpose of fixing this case." A Federal Bureau of Investigation agent charged that the defendants had used an investigator to trace the license-plate numbers of jurors' cars, many of which had been parked in a parking lot at the courthouse.

Gene Gotti was convicted of drug charges last year.

### Unable to Identify Gotti

In recent years, John Gotti has been acquitted twice in Federal and state trials. Prosecutors have been frustrated, as his success in court had added to a reputation of invulnerability.

A major witness against Mr. Gotti in 1984 appeared to have difficulty remembering information about the case. The wit-

ness, a refrigerator salesman named Romual Piecyk, accused Mr. Gotti and another man of slapping him and taking $325 from him in a parking dispute. Mr. Piecyk, apparently unaware of Mr. Gotti's reputation as a Mafia capo when he originally named him, was unable to identify him by the time the case went to trial.

In addition to sequestering the jurors in the current Gotti trial, Justice McLaughlin required them only to pronounce their last names to the lawyers.

### Isolation Brings Pressures

In organized-crime cases particularly, judges must decide whether to isolate jurors from any possible pressures from defendants. The choice, experts said, is often a difficult one because isolation brings its own pressures that can make verdicts unpredictable.

Locked together all day in what are often drab jury rooms, and then locked up at night in hotel rooms, strangers often grow agitated during deliberations.

Federal courts do not require sequestration at all and many states are moving away from requiring it during deliberations because of the expense and the stresses it causes jurors, said Barbara D. Underwood, a former prosecutor who is a professor at New York University Law School.

"They get very worried about when they're going to be able to resume their lives again," Ms. Underwood said.

Despite the risks, sequestration is common in organized-crime cases during deliberations, said Mr. Marcu, the former prosecutor. "There is a widespread recognition among prosecutors and law-enforcement people," he said, "that the mob will attempt to corrupt the system any way they can to beat a case."

### Three Weeks in a Hotel

Some of the jurors in the Gotti case have been living in an undisclosed hotel for more than three weeks. When Justice McLaughlin received the note that appeared to signal a bitter division inside the jury room he told the jurors there was no lesson in "judges school" about how to try to resolve the dispute.

For the defense, a dispute in the jury room is always encouraging news. If it is severe enough, it can help convince all the jurors that the prosecutors failed to prove their case beyond a reasonable doubt. That can mean an acquittal. Or it can mean a deadlock, leading to a mistrial.

After the note from the juror, Mr. Gotti's defense lawyer, Bruce Cutler, described his point of view. "Everything's going good," he said.